COURT OF APPEALS
DECISION
DATED AND FILED

March 9, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP617-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2015CF347

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ZOHN WANG KUB YANG,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Outagamie County: MARK J. McGINNIS, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Zohn Yang appeals a judgment of conviction. The sole issue on appeal is whether statements Yang made to police without having

been advised of his constitutional rights should have been suppressed. We conclude the police were not required to advise Yang of his rights because Yang was not in custody when he was interrogated. We therefore affirm.

## BACKGROUND

¶2 The State charged Yang with attempted first-degree intentional homicide and aggravated battery based upon allegations that Yang deliberately struck a woman with his vehicle, resulting in the amputation of the woman's leg. The complaint was subsequently amended to include additional charges of strangulation, disorderly conduct, intimidation of a witness, criminal damage to property, and negligent handling of a weapon—all involving the same victim, but arising from events that occurred on different dates.

¶3 Prior to trial, Yang moved to suppress several incriminating statements he made during a police interview in a hospital room the morning following the vehicular assault. Yang alleged the police failed to advise him of his constitutional rights prior to interrogating him.

¶4 The circuit court made the following factual findings after holding a suppression hearing. Yang arrived at Theda Clark Hospital, where the victim had already been transported, sometime between 11:30 p.m. and midnight. Yang was not directed to the hospital by law enforcement, and he transported himself there voluntarily in the company of a pastor.

¶5 Prior to Yang's arrival, the hospital contacted the Neenah Police Department to initiate certain lockdown procedures based on information provided by the victim that she believed Yang had intentionally committed the offense and intended to harm her. Under the lockdown procedures, "not everybody was free to

walk around the hospital at their will." In particular, the hospital took measures to limit Yang's movements so as to ensure that he was not allowed to visit with or see the victim. Law enforcement officers were involved in this effort by monitoring Yang in the waiting room area and restricting his contact with the victim's family members. Two officers also accompanied Yang when he left the waiting room to go the restroom. Out of Yang's presence, the officers discussed whether Yang would have an alternate way to escape from the bathroom and what they would do if he made such an attempt.

¶6    At some point in the early morning hours, Yang was admitted to the hospital for testing or observation related to complaints of chest pain. Between 2:30 a.m. and 4:30 a.m., investigator Daniel Running interviewed Yang in Yang's hospital room, with the door closed. Running told Yang that he did not have to speak to him, but Running did not advise Yang of his right to counsel. During the interview, Running made no promises or threats to Yang, did not handcuff or physically restrain him, and did not place him under formal arrest or tell him that he could not leave the room or the hospital.

¶7    The hospital provided Yang with discharge papers between 4:30 a.m. and 4:45 a.m. The timing of his medical discharge was dictated by hospital personnel, not law enforcement. Shortly thereafter, Running left Yang's hospital room. Sometime after 4:45 a.m., while Yang was still in the hospital room following his medical discharge, sergeant Wang Lee entered the room. Lee was wearing plain clothes, and Yang recognized Lee from their church. Lee identified himself as a police officer and advised Yang that he was not under arrest. Lee proceeded to question Yang in both English and Hmong. Lee's interrogation of Yang was conducted in a conversational manner, free from threats

or promises, and lasted about one hour. It was during Lee's interrogation that Yang made the incriminating statements he sought to suppress.

¶8 The circuit court concluded that Lee's questioning of Yang did not constitute a custodial interrogation because a reasonable person in Yang's position would have felt free to leave the hospital after being discharged and told that he was not under arrest. The police employed no other coercive or restrictive measures during the interrogation. The court denied the suppression motion and subsequently denied reconsideration. The matter then proceeded to trial, where Yang was convicted on all charges. Yang now appeals his conviction, challenging the court's suppression ruling.

## DISCUSSION

¶9 When reviewing a motion to suppress evidence, we will uphold the circuit court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2) (2017-18); *State v. Harris*, 2017 WI 31, ¶9, 374 Wis. 2d 271, 892 N.W.2d 663. We will independently determine, however, whether the facts found by the court satisfy applicable constitutional provisions. *Id.*

¶10 Law enforcement officers are constitutionally required to inform suspects of their rights to remain silent and to have an attorney present during custodial interrogations. *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). The *Miranda* safeguards are aimed at dispelling the compulsion inherent in a custodial setting and therefore do not apply unless a suspect is in custody. *State v. Bartelt*, 2018 WI 16, ¶30, 379 Wis. 2d 588, 906 N.W.2d 684. A suspect who is in custody at one point during a police encounter may no longer be in custody later in the same encounter if circumstances have changed. *State v. Kilgore*, 2016 WI App 47, ¶34, 370 Wis. 2d 198, 882 N.W.2d 493.

¶11 A person is in custody for **Miranda** purposes when there has been a formal arrest or a restraint on movement to a degree associated with a formal arrest. *See **Kilgore***, 370 Wis. 2d 198, ¶31. A court first looks at the totality of the circumstances to determine whether a reasonable person in the suspect's position would have felt free to terminate the interview and leave the scene. ***Id.*** When the totality of the circumstances demonstrates that a reasonable person in the suspect's position would not feel free to leave, a court should additionally consider whether the environment of the interview "presents the same inherently coercive pressures as the type of station house questioning at issue in **Miranda**." **Howes v. Fields**, 565 U.S. 499, 509 (2012).

¶12 The totality of the circumstances surrounding an interrogation includes the degree of restraint; the purpose, place and length of the interrogation; and what has been communicated to the suspect by the police. **Kilgore**, 370 Wis. 2d 198, ¶19. Factors relevant to the degree of restraint are: whether the suspect is handcuffed, whether a weapon is drawn, whether a frisk is performed, the manner in which the suspect is restrained, whether the suspect is moved to another location, whether questioning took place in a police vehicle, and the number of officers involved. ***Id.***

## 1. Findings of Fact

¶13 Yang challenges a number of factual findings made by the circuit court following the suppression hearing. First, Yang contends the court erroneously determined he consented to restricted movement by entering a hospital he knew was in lockdown, whereas the evidence showed Yang arrived at the hospital before the police. Second, Yang contends the court erroneously determined the lockdown applied to all persons entering the hospital, whereas the

evidence showed only Yang's movements and the movements of others attempting to have contact with Yang, such as his pastor, were restricted. Third, Yang contends the court erroneously determined it was the hospital that took measures to restrict Yang's movements to protect the victim's safety while she was in the hospital's care, whereas the evidence showed it was the police who were restricting Yang's movements while they investigated whether the victim's injuries were caused intentionally or accidentally. In particular, the police would not allow Yang to leave the waiting room, except to go to the restroom with a police escort. Fourth, Yang contends the court erroneously determined that Yang was not free to leave the hospital prior to his discharge, whereas patients have a constitutional right to refuse medical care and leave a hospital at any point. Fifth, Yang contends the court erroneously determined the police did not direct Yang where to go or to stay in his room after his first interview with Running, whereas the evidence showed Running asked Yang if he needed anything and told Yang he would be right back as he left the room, indicating Running was not done speaking with Yang.

¶14    In addition, Yang challenges several statements and findings the circuit court made during the hearing on Yang's motion for reconsideration. Yang contends the court erroneously stated that no new evidence had been presented on reconsideration, when Yang had introduced Exhibit 17. That exhibit was a disc containing six new video clips showing contacts between Yang and law enforcement at the hospital prior to the interrogations conducted by Running and Lee. In one of those video clips, a law enforcement officer told Yang, "we can't let you go anywhere," and Yang should "sit tight" in the waiting room. Yang also takes issue with the court's statement that Yang was unaware of his pastor's whereabouts because Yang was aware that his pastor was not with him for hours.

6

Finally, Yang contends the court erroneously found police did not direct or influence hospital staff to delay Yang's discharge. Instead, the evidence showed that a staff member's offer to delay Yang's discharge and allow Yang to be interviewed in his hospital room was made in response to a law enforcement officer's inquiry as to when Yang would be released and statement that there were too many people in the waiting room to conduct the interview there.

¶15 The State does not directly dispute Yang's contention that some of the circuit court's findings were clearly erroneous. Instead, it argues that none of the challenged findings were necessary to the court's ultimate determination that Yang was not in custody when Lee interviewed him. Therefore, for the purposes of this appeal, we will assume without deciding that law enforcement officers restricted Yang's movements, isolated him from others, and told Yang he was not free to leave while he was in the waiting room prior to his hospital admission for chest pain.

## 2. Custody Determination

¶16 As noted above, a suspect may be considered in custody at one point during a police encounter, while not in custody during another portion of the encounter. *Kilgore*, 370 Wis. 2d 198, ¶34. Our focus here is on the time period when Yang made incriminating statements during his interview with Lee.

¶17 The purpose of Lee's interview with Yang was to ascertain whether Yang had accidentally or intentionally struck the victim with his vehicle. The interview lasted about one hour and was conducted shortly after a two-hour interview with Running. Running had previously advised Yang that he was free to leave, and Running left Yang alone in the hospital room after Yang had been

medically discharged. When Lee entered the room after Running had left, Lee again advised Yang that he was not under arrest and was free to leave.

¶18 During Lee's interview, Yang was not handcuffed or otherwise physically restrained, did not have a weapon pointed at him, and was not frisked. The police neither moved Yang to the hospital room where he was interrogated nor removed him from it, and the room was not an inherently coercive environment, such as a police station or squad car.

¶19 The totality of these circumstances weighs against a determination that Yang was under a degree of restraint comparable to a formal arrest when he made his statements to Lee. Even if Yang may not have felt free to leave the hospital waiting room area earlier, a reasonable person in Yang's position would have felt free to leave the hospital after two officers subsequently informed him that he was free to leave and after any medical need for him to be at the hospital had dissipated. We conclude the circuit court properly denied Yang's suppression motion and affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).